UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
EDWARD D. FAGAN, RONNIE                    :
FULWOOD, EUGENE THOMASON,         :                    05 Civ. 10114 (CSH)
FREDERICK T. LOWE, and FLORIDA     :
LAW GROUP, LLC,                                   :
                                                              :
                            Plaintiffs,              :                    MEMORANDUM OPINION
                                                              :                          AND ORDER
          -against-                                    :
                                                              :
DEUTSCHE BUNDESBANK, a/k/a         :
"GERMAN NATIONAL BANK";              :
COMMERZBANK AG; COMMERZBANK:
"New York Branch"; COMMERZBANK    :
CAPITAL MARKETS CORP.; and           :
"JOHN/JANE DOES 1-10",                      :
                                                              :
                            Defendants.             :
-------------------------------------------------------X

HAIGHT, Senior United States District Judge:

        In this action, there are three motions currently pending before the Court: (1) defendant

Commerzbank AG[1] has moved for dismissal of the complaint on the ground of *forum non*

*conveniens*; (2) defendant Deutsche Bundesbank ("Bundesbank") has moved for dismissal for lack

of subject matter jurisdiction, insufficiency of process, insufficiency of service of process, and lack

of personal jurisdiction; and (3) plaintiff Edward D. Fagan has moved for leave to amend his

complaint.  For the following reasons, the Court grants the motions by Commerzbank and

Bundesbank, and denies the motion by Fagan.

--------------------------------

[1] The complaint refers to two other entities: "Commerzbank 'New York Branch'" and
"Commerzbank Capital Markets Corp."  For the reasons stated in Commerzbank AG's brief on
its present motion at 1 fn.1, unrefuted by plaintiffs, no viable claims are pleaded against these
other entities.  Accordingly the Court regards Commerzbank AG as the sole moving party, and
will refer to it hereafter as "Commerzbank."

## BACKGROUND

The plaintiffs are four Florida residents and a Florida law firm. They filed the captioned action in this Court to recover damages for allegedly false and defamatory statements made about them in Germany by German bank spokesmen to German newspapers which were then, in the first instance, published in the German language in Germany.[2]

Commerzbank is alleged to be "a German bank which has its principal offices in Frankfurt Germany." Complaint ¶ 7. Subject matter jurisdiction over plaintiffs' claims against Commerzbank is based upon diversity of citizenship under 28 U.S.C. § 1332. Bundesbank is alleged to be the "German National Bank," having its principal offices in Frankfurt, Germany, with another office in New York City. *Id.* ¶ 6. Subject matter jurisdiction over plaintiffs' claims against Bundesbank is alleged based upon 28 U.S.C. §§ 1330 and 1605 *et seq.* (providing commercial exceptions to the Foreign Sovereign Immunities Act). *Id.* ¶ 9. The complaint alleges that "[i]n or about mid-October 2005," Commerzbank and Bundesbank through "official representatives" caused libelous and slanderous statements about plaintiffs to be "published in and through various international wire services, newspapers and magazines," *id.* ¶ 22. The particular statements alleged in the complaint include two "Statement[s] of Commerzbank Spokesman" on October 17, 2005 and one statement attributed to Bundesbank on that same date, all of which were published on in the October 18 edition of the "German Newspaper *Frankfurt Allgemeine Zeitung,*" *id.* ¶ 25. The complaint attaches as

---

[2] The allegedly slanderous or libelous statements apparently relate to plaintiffs' conduct in an action brought by these same plaintiffs against the same or similar defendants in a federal court in Florida. The Florida action apparently concerns plaintiffs' efforts to force German banks, including the defendants, to honor certain bonds ("the Bonds") reportedly issued by the short-lived Weimar Republic during the period between the two world wars.

Exhibit 1 a copy of the pertinent newspaper article in the German language and a translation into English.

As mentioned, both defendants Bundesbank and Commerzbank have moved to dismiss. Instead of opposing the motions to dismiss, all the plaintiffs except Fagan have stipulated to the dismissal of their claims against the defendants. Therefore, Fagan is the sole remaining plaintiff in this action.

Fagan has, in an apparent attempt to counter Commerzbank's *forum non conveniens* argument and correct the pleading errors asserted by Bundesbank, now moved to amend his complaint.

**DISCUSSION**

I.    **The *Forum Non Conveniens* Motion**

Commerzbank contends that the courts of Germany furnish an adequate alternative remedy for Fagan's claims, and that the relevant private and public interests identified in *forum non conveniens* jurisprudence all militate in favor of this Court dismissing the action in favor of the German courts as the more convenient forum.

In *Flores v. Southern Peru Copper Corp.*, 253 F. Supp. 2d 510 (S.D.N.Y. 2002), *aff'd on other grounds*, 414 F.3d 233 (2d Cir. 2003), I had occasion to consider the present state of Supreme Court and Second Circuit jurisprudence in respect of the doctrine of *forum non conveniens*. Plaintiffs, Peruvian residents, claimed that environmental pollution from the defendant American company's Peru mining operations caused them injuries. Plaintiffs asserted subject matter jurisdiction under the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350. Defendant moved to dismiss the complaint on the ground that it did not state a claim under the ATCA and, in the

alternative, on the ground of *forum non conveniens*.

I concluded that the complaint did not state a claim under the ATCA and accordingly dismissed the action for lack of federal subject matter jurisdiction. 253 F. Supp. 2d at 512-525. However, in order to place this Court's views fully before the Second Circuit on the inevitable appeal, I went on to analyze the applicability of *forum non conveniens* to the case, *id*. at 525- 544, and concluded that if I had not decided that the Court lacked subject matter jurisdiction, I would "dismiss the action on the grounds of *forum non conveniens*." *Id*. at 544.

On appeal, the Second Circuit affirmed the dismissal of the complaint on jurisdictional grounds and consequently did not reach *forum non conveniens*, but was kind enough to say that "[t]he District Court conducted a careful and thorough analysis of this issue, in which it considered all of the relevant factors." 414 F.3d at 266. Thus encouraged, I apply those factors to the case at bar.

### A.    Deference Due Plaintiff's Choice of Forum

When presented with a motion to dismiss for *forum non conveniens*, it is necessary for the court to determine the level of deference due the plaintiff's choice of forum. *See Flores*, 253 F. Supp. 2d at 527 (citing *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001)). Supreme Court precedent instructs that a plaintiff's choice of his own home forum should be given great deference, while a foreign resident's choice of a U.S. forum should be given less consideration; this is consistent with the broader principle "under which the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." *Id.* at 527 (quoting *Iragorri*, 274 F.3d at 71). Foremost amongst those considerations, according to the *Iragorri* court, is whether a plaintiff chose a particular forum for genuine convenience or for

tactical advantage. *Id.* The Second Circuit stated it this way:

> [T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."

*Id.* (quoting *Iragorri*, 274 F.3d at 71-72).

In the case at bar, Fagan is a Florida resident, not a resident of this District. Further, as will be discussed more fully below, this action has no real connections to this District, and litigation here would be inconvenient for multiple reasons. Given these facts, Fagan's choice of this District as the forum for this litigation is entitled to minimal deference.

## B.      Adequate Alternative Forum

The Court begins the *forum non conveniens* analysis in earnest by determining whether an adequate alternative forum exists. *Flores*, 253 F. Supp. 2d at 526. A forum is considered adequate for the purposes of *forum non conveniens* if the defendant is subject to the jurisdiction of that forum, and the foreign forum provides a remedy for the alleged wrong. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).

In the case at bar, it is apparent from the declaration of Tobias Kraetzschmar, an attorney admitted to practice in Germany who practices with a Munich firm and also holds a J.D. degree from Emory University in Atlanta, that the courts of Germany furnish an adequate alternative forum for the litigation of Fagan's claims: Commerzbank is subject to jurisdiction in Germany, and Germany provides remedies for libel. *See* Declaration of Tobias Kraetzschmar, dated Feb. 8, 2006 ("Kraetzschmar Decl. "), at 6-7, B(VI) & 7, (B)(2); *see also Flores*, 253 F. Supp. 2d at 531- 541 and

5

cases cited. In addition, numerous courts[3] have found Germany to be an adequate alternative forum, including a court of this District in the context of a similar defamation suit. *See Opert v. Schmid*, 535 F. Supp. 591 (S.D.N.Y. 1982).

Fagan's arguments to the contrary are unpersuasive. In his papers submitted in support of his motion to amend, Fagan first argues that German courts will not have jurisdiction over all defendants, because Fagan proposes to amend his complaint to add Terrence Sweeney, Esq., the general counsel of Commerzbank's U.S. offices, as well as other defendants "whom it should be assumed" would not be domiciliaries of Germany. In the first place, Fagan will not be permitted to amend his complaint to add Sweeney as a defendant, as the proposed amended complaint alleges no individual involvement by Sweeney.[4] Further, the Court will not deny an otherwise warranted motion to dismiss pursuant to *forum non conveniens* simply because Fagan asserts the existence of certain phantom defendants who may possibly affect the *forum non conveniens* analysis. Moreover, although the Court can only speculate as to the roles of any remaining unidentified defendants, it seems likely that an additional defendant would be someone having a role in the allegedly defamatory statements, and thus would very likely be properly subjected to German jurisdiction, under either the European Convention or German law. *See* Kraetzschmar Decl. at 2-6, B(1).

Fagan next argues that Germany is not an adequate alternative forum because German courts

---

[3] *See, e.g., NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale*, No. 96 Civ. 9321, 1999 WL 39539 (S.D.N.Y. Jan. 28, 1999) (finding German courts to be an adequate alternative forum); *Jauss v. Lehman Bros., Inc.*, No. 94 Civ. 2921, 1995 WL 4023 (S.D.N.Y. Jan. 5, 1995) (same).

[4] Fagan apparently inserts the name of Mr. Sweeney, a "New York lawyer" and "New York resident" (Proposed Amended Complaint ¶ 5), into the pre-existing allegations in a transparent attempt to create the illusion of a real connection to this District.

utilize a different fee structure[5] for legal proceedings and different processes for obtaining and using

evidence. Regarding the fee structure argument, however, the Second Circuit has made it plain that

a plaintiff's "claim of financial hardship may not be considered in determining the *availability* of an

alternative forum but must be deferred to the balancing of interests relative to the forum's

convenience." *Flores*, 253 F. Supp. 2d at 531-32 (quoting *Murray v. British Broadcasting Corp.*,

81 F.3d 287, 292-93 (2d Cir. 1996)) (emphasis in original); *see also NCA Holding*, 1999 WL 39539,

at *2 ("The unavailability of contingency fee arrangements in Germany is only one factor to be

weighed in determining the balance of convenience *after* the court determines that an alternative

forum is available.") (quotation marks and citation omitted; emphasis in original). Additionally, the

fact that German courts may utilize different procedures regarding evidence does not mean that

*forum non conveniens* is inappropriate: "That the German legal system is different than that of the

United States does not render Germany an inadequate forum." *NCA Holding*, 1999 WL 39539, at

*2. Thus, the differences between the U.S. and German court systems highlighted by Fagan are

insufficient to eliminate Germany as an adequate alternative forum. Fagan cites no case law

authority to the contrary.

### C. Balancing of the Public and Private Interests

Next, the Court must weigh the public and private interests identified in *Gulf Oil Corp. v.

Gilbert*, 330 U.S. 501 (1947), in order to determine which forum will be most convenient and will

best serve the ends of justice. *Flores*, 253 F. Supp. 2d at 526.

---

[5] With regard to the fee structure, Fagan specifically complains (1) that he will be unable to afford the bond required by German law to cover the defendants' legal costs; (2) that he will be unable to afford to pay the substantial court fees required by German courts; (3) and that, as German law does not allow contingency fee arrangements, he will be unable to afford to pay a German lawyer.

i.    Private Interests

Private interest factors focus on the convenience of the litigants, and include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 541 (quoting *Gilbert*, 330 U.S. at 508).

An evaluation of the private interests at issue militates in favor of litigation in the German courts. Most notably, the allegedly defamatory statements were first published in the German language in German newspapers, and the proof in this case will turn almost entirely upon the testimony of German witnesses about what was said in Germany by whom and to whom. As a result, the sources of proof are far more accessible in Germany than in this District. Additionally, there is no compulsory process available to this Court by which the attendance of unwilling witnesses in Germany could be compelled, and the cost of obtaining the attendance of willing witnesses would greatly exceed the comparable cost in Germany.

With regard to Fagan's above-mentioned argument that Germany's legal fee structure, combined with his financial constraints, would effectively preclude him from pursuing this action in Germany,[6] I note that Fagan has submitted absolutely no evidence of his current financial situation or his asserted inability to pay the potential costs associated with pursuing this matter in a German court. Fagan's bald assertion of inability to pay is insufficient to defeat the *forum non conveniens*

---

[6] To reiterate, Fagan claims that German law precludes contingent fee arrangements, requires the posting of a bond to cover the defendants' legal costs, and requires the payment of substantial court fees, all of which purportedly will make litigation in Germany too expensive for Fagan to afford.

motion. In addition, Commerzbank has agreed to waive the requirement to post a bond, lessening the burden on Fagan should he be required to take his claims before the German courts. In any event, even if Fagan would face significant financial hardship if required to pursue this action in Germany, that does not require this Court to retain jurisdiction: a plaintiff's financial hardship resulting from the lack of contingency fee arrangements is only one factor to be weighed in determining the balance of convenience, and, for the reasons stated and to be stated in this opinion, such overwhelming private and public interests instruct that dismissal for *forum non conveniens* is appropriate in this case, whatever Fagan's financial abilities may be.[7] *Flores*, 253 F. Supp. 2d at 542-43 (citing *Murray*, 81 F.3d at 287, 292).

ii.  Public Interests

Public interest factors include, *inter alia*, administrative difficulty that arises when litigation piles up in congested centers rather than being handled at its origin, the burden of jury duty, the local interest in having localized controversies decided at home, and the appropriateness of having the trial in a forum that is at home with the law to be applied. *See id.* at 543 (citing and quoting *Gilbert*, 330 U.S. 508-09).

An evaluation of the public interests at issue again counsels that Germany is the better forum for this litigation. Court congestion in this District has perhaps lessened somewhat from historic highs, but the judges here continue to have many complex cases to administer. More importantly, all of the pertinent conduct in this action occurred in Germany, the case has no relation to this forum, and Fagan is a Florida resident. As a result, there is no justification for requiring local jurors to

---

[7] This analysis also applies to Fagan's complaints about Germany's requirements that certain foreign plaintiffs must post a bond, that a plaintiff must pay allegedly significant court costs, and that the losing party must pay the victor's fees and costs.

devote their public service to finding the facts in this action.  Finally, German law would in all likelihood govern the dispute.  *See id.* at 543-544 and cases cited.

### D.  The Motion to Dismiss for *Forum Non Conveniens* Should be Granted

For the foregoing reasons, I grant the motion of defendant Commerzbank to dismiss Fagan's complaint on the ground of *forum non conveniens*, on the following condition: Commerzbank must file in this Court on notice to Fagan a stipulation with respect to the claims Fagan pleads in his complaint agreeing to (1) defend those claims on the merits in any action Fagan may bring in a German court and (2) waive any statute or period of limitations that would otherwise apply under German law to any action brought by Fagan in a German court within two years after the date of this Court's order of dismissal or the resolution of any and all appeals from that order, whichever occurs later.[8]  Upon the service and filing of a stipulation conforming to this Opinion and Order, the Court will direct the Clerk to dismiss the complaint against Commerzbank on the ground of *forum non conveniens*.

## II.  Bundesbank's Motion to Dismiss

As mentioned above, Bundesbank has moved for dismissal on several grounds.

### A.  Sufficiency of Process and Service of Process

Bundesbank argues that it has not been effectively served with valid process, and moves for dismissal for both insufficiency of process under Federal Rule of Civil Procedure 12(b)(4) and insufficiency of service of process under Rule 12(b)(5).  "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the

---

[8]  These conditions would have been imposed in *Flores*, 253 F. Supp. 2d at 544, and are routinely imposed by district courts in this circuit when cases are dismissed under the *forum non conveniens* doctrine.

complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y.2002). "When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *Preston v. New York*, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002).

Bundesbank asserts that it is a designated consulate of the Federal Republic of Germany and as such is an entity of a foreign state which must be served in accordance with the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*[9] Fagan does not contest Bundesbank's assertion that it is a part of the German state, and indeed labels the defendant as the "German National Bank." The Court sees no reason to doubt Bundesbank's representations on this issue, as Bundesbank is listed as a foreign mission by the U.S. Department of State (*see* Bundesbank's Main Memorandum, Ex. A), and has been described by the Second Circuit as "the central bank of Germany roughly equivalent to the Federal Reserve Bank" (*United States v. First Nat'l City Bank*, 396 F.2d 897, 900 n.5 (2d Cir. 1968)).

FSIA § 1608(a) addresses the requirements for service upon a foreign state and its subdivisions, while § 1608(b) addresses the requirements for service upon an agency or instrumentality of a foreign state. Bundesbank asserts that its Representative Office in New York has been officially designated as a consular office by the United States, and as such must be considered as synonymous with the foreign state, meaning that service of process must accord with § 1608(a). Fagan does not dispute this claim, and it appears correct. *See Gray v. Permanent Mission of People's Republic of Congo*, 443 F. Supp. 816, 819-21 (S.D.N.Y.), *aff'd*,

---

[9] For these purposes, a "foreign state" includes a subdivision of a foreign state or an agency or instrumentality of a foreign state. 28 U.S.C. § 1603(a).

580 F.2d 1044 (2d Cir. 1978) (holding that a country's mission to the United Nations was required to be served under § 1608(a)).  The court in *Gray* cited the legislative history of the FSIA, where, in reference to FSIA § 1610 (regarding immunity from attachment or execution), the court stated that the buildings of diplomatic and consular missions are those of the foreign state itself.  *Id.*

FSIA § 1608(a) reads:

Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

However, it appears that the plaintiffs at bar have neither attempted nor accomplished service by any of the methods permitted by this section. According to Bundesbank, a private process server attempted to serve process upon the Representative Office of Bundesbank at 499 Park Avenue, but was not permitted to enter the premises, and left without leaving any papers. Thereafter, copies of the summons and complaint (in English with no German translation) were mailed to the Representative Office of Bundesbank.

Regarding the first two avenues of service under FSIA § 1608(a), Bundesbank asserts that no special arrangement for service existed between the parties, and that, although there is an international agreement between the United States and Germany (the Hague Convention) pursuant to which service could be accomplished, plaintiffs' service attempts did not comply with that convention's requirements. Regarding the last two avenues of service, Bundesbank points out that both require the clerk of the court to dispatch the summons and complaint, which, according to Bundesbank's recitation, has not occurred in this case.

Fagan has contested neither Bundesbank's legal arguments regarding its status as a part of the foreign state nor its recitation of the facts of plaintiffs' attempted service; he makes no effort to counter that part of Bundesbank's motion directed at the sufficiency of process and service of process in his responsive papers submitted with his motion to amend. As a result, it appears that plaintiffs have failed to accomplish the required service in accordance with the FSIA.

Additionally, Bundesbank claims that the process purportedly served on it is insufficient. In support of this position, Bundesbank asserts that plaintiffs have not satisfied certain process requirements specified in § 1608(a)(3) & (4), such as the inclusion of a notice of suit and a translation of all of the documents into German. Again, Bundesbank's undisputed recitation of

the facts supports the conclusion that plaintiffs have not, in fact, complied with these requirements.

As a result of the foregoing, the Court is justified in dismissing this action pursuant to Rule 12(b)(4) & (5) for insufficient service of process and insufficient process. While in most cases, the Court would be inclined to give the plaintiff an opportunity to correct the process and service of process errors, in this case, as will be seen, even if service of adequate process were accomplished, the Court would lack subject matter jurisdiction over the action.

### B.    Subject Matter Jurisdiction

Bundesbank argues that the Court does not have subject matter jurisdiction over the action because, as a designated consulate of a sovereign foreign state, it is immune to this sort of lawsuit under the FSIA. The FSIA contains a broad grant of sovereign immunity to foreign states, including their agencies and instrumentalities, subject to certain enumerated exceptions:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 and 1607 of this chapter.

28 U.S.C. § 1604.

As mentioned above, Fagan has not contested Bundesbank's claim that it is a subdivision or instrumentality of the German state, and Bundesbank's representations on that score are adequately supported. Bundesbank, therefore, has satisfied its initial burden of making a *prima facie* showing that it falls within the scope of § 1604. *See Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (citing *Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for A.W. Galadari*, 12 F.3d 317, 325 (2d Cir.

1993)) (discussing the burdens under the FSIA analysis).

"[O]nce the defendant presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." *Drexel Burnham*, 12 F.3d at 325 (internal citation omitted). Here, Fagan asserts that the complained-of conduct of the Bundesbank representatives falls within one or more of the four exceptions to sovereign immunity enumerated in 28 U.S.C. § 1605(a)(2)-(5).[10] *See* Fagan's Renewed Affidavit in Opposition to Motion to Dismiss and in Support of

---

[10] 28 U.S.C.A. § 1605(a) reads, in relevant part:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

. . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or

Motion to Permit Amended Complaint ("Fagan Aff.") ¶ 8(d).

Specifically, Fagan, in response to Bundesbank's motion to dismiss, alleges that Bundesbank, in addition to acting in its capacity as an "organ" of the German government, also acted as a private commercial bank. Fagan asserts that the defamatory statements were part of "a broader pattern and history of acts which were designed to assist [Bundesbank], other German Debtors and other financial institutions involved with the Bonds to benefit from their wrongful expropriation of property belonging to plaintiffs and others."[11] Fagan Aff. ¶ 4. It is Fagan's contention that Bundesbank and other defendants, in an apparent attempt to stop the plaintiffs from pursuing the Bond actions in the Florida courts, or to interfere with the rights of plaintiffs and others to collect on the Bonds, made the defamatory statements regarding Fagan's conduct and the validity of the Florida actions. *See id.* ¶ 8.

Bundesbank responds in its motion papers that the conduct of which Fagan complains does not, in fact, fall within one of the statutory exceptions to the FSIA's general grant of immunity from suit in American courts, and thus subject matter jurisdiction is lacking. I agree with Bundesbank, for the following reasons.

Fagan's claim in this action is essentially one for defamation, a tort. Subsection 1605(a)(5), cited to by Fagan, provides a tort exception to sovereign immunity under the FSIA.

---

employment; except this paragraph shall not apply to--

    (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

    (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights;

. . .

[11] *See* footnote 2, *supra*.

By its very terms, however, that exception is inapplicable to the tort of defamation: subsection

1605(a)(5)(B) states that the exception does not apply to "any claim arising out of malicious

prosecution, abuse of process, *libel*, *slander*, misrepresentation, deceit, or interference with

contract rights" (emphasis added). Some courts have held that this "exception to the exception"

applies to § 1605(a)(2) as well, so that no defamation claims could be maintained against a

foreign sovereign even under the that subsection of the FSIA. Indeed, Chief Judge Mukasey of

this Court reached that conclusion in his thoughtful opinion in *Bryks v. Canadian Broadcasting

Corp.*, 906 F. Supp. 204 (S.D.N.Y. 1995), where he wrote:

> I find it anomalous to read the FSIA to permit defamation claims under the
> commercial activity exception. First, it seems odd that Congress would go to the
> trouble of specifically excluding defamation claims from the FSIA's abrogation of
> immunity in one part of the statute, yet would implicitly permit such claims
> elsewhere in the statute . . . . Second, the nature of the torts listed in the
> "exception to the exception" makes it hard to infer that Congress intended that
> provision to apply only to noncommercial activity, as it would if plaintiff's
> reading of the statute were correct. [For example,] [i]t is difficult to conceive of a
> claim for "interference with contract rights" that does not involve commercial
> activity . . . . Third, to allow the assertion of defamation claims under Section
> 1605(a)(2) would create an incongruity between foreign sovereign immunity and
> the sovereign immunity of the United States . . . . It seems "unlikely that
> Congress wished to create a double standard under which foreign sovereigns
> could be sued in United States courts on tort claims, such as libel, for which the
> United States Government itself is immune."

*Bryks*, 906 F. Supp. at 209 (quoting *Gregorian v. Izvestia*, 658 F. Supp. 1224, 1233-34 (C.D.

Cal.1987), *aff'd,* 871 F.2d 1515, 1522 n.4 (9th Cir.1989)), *quoted in Leutwyler*, 184 F. Supp. 2d

at 294.[12]

---

[12] In *Leutwyler*, Judge Lynch faced and addressed many of the same issues presented by
the case at bar. I agree with his analysis in that case, and accordingly will draw from his well-
reasoned opinion in this Memorandum Opinion and Order where appropriate and helpful. The
*Leutwyler* case will be discussed further in text, *infra*.

I find, as did Judge Lynch in *Leutwyle*r, that this reasoning, while persuasive, is "difficult to square with the literal language of FSIA." *Leutwyler*, 184 F. Supp. 2d at 294. The tort exception embodied in § 1605(a)(5) provides that it applies to tort actions "not otherwise encompassed in paragraph (2) [the commercial exception]." This language is reasonably read to mean that subsections 1605(a)(2) and (5) are mutually exclusive, such that the limitation on tort suits (from § 1605(a)(5)(B)) would *not* be applicable to those tort suits able to "fit" within the § 1605(a)(2) commercial exception. Most likely due to this "not otherwise encompassed" language, Judge Mukasey's position is the minority position amongst the courts that have addressed this particular issue, with the majority of courts limiting the applicability of the "exception to the exception" to non-economic torts under § 1605(a)(5). *Id.* (collecting cases). It is not necessary, however, for me to choose one position over the other[13] because I hold that, even if the § 1605(a)(2) commercial exception is available for certain economic torts, it does not apply to Fagan's cause of action.

The commercial exception to FSIA's grant of sovereign immunity applies in cases

in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

As mentioned, the *Leutwyler* case is instructive on this matter. Like the case at bar, *Leutwyler* also involved, *inter alia*, a defamation claim, brought by a New York-based

---

[13] As there is no controlling Second Circuit authority on this issue, the Court is free to select whichever position it finds more compelling. *See, e.g., id.* at 295.

photographer against members of the court of the royal family of Jordan, who had invited
Leutwyler to Jordan to photograph its members.  When certain of the photographs were
published in American magazines and news sources, apparently without permission from the
royal family, employees of an official of the Royal Court of Jordan[14] allegedly defamed
Leutwyler by informing the publishers and news agencies that Leutwyler had stolen or otherwise
wrongly appropriated the usage rights to the photographs.  *Id.* at 283-85.  Judge Lynch found that
the underlying conduct, such as the agreement to travel to Jordan and photograph the royal
family, was sufficiently commercial in nature, but the claim for defamation did not have the
requisite nexus to the commercial activity.  *Id.* at 293-95.[15]  The judge stated "[t]he fact that the
allegedly defamatory statements referred to photographs that had been the subject of a
commercial contract does not give the defamation a 'commercial' character."  *Id.* at 295.

The connection asserted in the case at bar is even more strained.  Here, Fagan attacks as
defamatory the statement allegedly spoken by a Bundesbank official and published in a German
newspaper that, "It is utterly outrageous how Fagan is operating with falsified and farfetched
accusations."  Complaint ¶ 25(b).  In order for the commercial exception to apply to Fagan's
cause of action, this allegedly defamatory statement must have been made "in connection with a

---

[14]  The Royal Court "acts as a political and administrative conduit through which the King
commands the government and the armed forces.  The Royal Court, which might be analogized
to a hybrid of the United States' Office of the President and various administrative agencies
within the Executive Branch, contains various sub-offices and departments that conduct a variety
of executive and administrative functions."  184 F. Supp. 2d at 281 (footnote omitted).

[15]  Judge Lynch also noted that "the effort to bring [the tort] causes of action under this
heading is at best an end-run around [the] more straightforward analysis of these claims [under §
1505(a)(5), the non-commercial tort exception]."  *Id.* at 293-94.  So too in the case at bar.

commercial activity."[16]  The only possible commercial activity made out by the facts of this case is Bundesbank's alleged commerce in the Bonds.  The statement, however, does not even directly relate to Bundesbank's purported dealings in the Bonds; instead, it more closely relates to Fagan's conduct in a court case in Florida, which involves attempts by plaintiffs to collect on the Bonds.  As such, Fagan's cause of action lacks a sufficient nexus to Bundesbank's purported commercial activity.  *See NYSA-ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35, 38 (2d Cir. 1993) (recognizing the requirement that a "significant nexus" exist between the commercial activity and a plaintiff's cause of action); *Leutwyler*, 184 F. Supp. 2d at 293.  Even accepting Fagan's factual allegations as true, the link between the alleged statement and Bundesbank's purported commercial conduct relating to the Bonds is too attenuated to permit Fagan to take advantage of the FSIA commercial exception embodied in § 1605(a)(2).  Notably, Fagan does not cite one case that would counsel for a contrary conclusion.

Next, Fagan perfunctorily asserts that the exceptions to sovereign immunity provided by §§ 1605(a)(3) & (4)[17] are applicable to his claims.  Again, he cites no legal authority in support of this contention, and a simple reading of the statutory subsections shows that those exceptions are inapplicable to the defamation claims at issue in this action.

---

[16] FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d).  Thus, when determining whether conduct is commercial in nature, the appropriate inquiry is whether "the particular actions that the foreign [entity] perform[ed] (whatever the motives behind them) are the type of actions by which a private party engages in trade and traffic or commerce." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (emphasis in original) (internal quotations omitted), *quoted in Leutwyler*, 184 F. Supp. 2d at 290.

[17] *See* footnote 10, *supra*.

Therefore, as Bundesbank is entitled to sovereign immunity under the broad grant provided by the FSIA, and as no exception to that broad grant of sovereign immunity applies to Fagan's claims, the Court is without subject matter jurisdiction to consider this action.

### C.    Personal Jurisdiction

As mentioned in the introductory paragraph, Bundesbank also moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) due to a lack of personal jurisdiction. Under the FSIA, personal jurisdiction equals subject matter jurisdiction plus valid service of process. *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 746 (2d Cir. 2000) (citing *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991)). As the foregoing discussion revealed that both of these factors are missing in the case at bar, personal jurisdiction is accordingly lacking. Therefore, dismissal is also warranted on that ground.[18]

### III.    Fagan's Motion to Amend

Fagan seeks leave to amend his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend, however, need not be granted where doing so would be futile. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). The decision whether to grant leave to amend is within the sound discretion of the Court. *See Quaratino v. Tiffany &*

---

[18] It perhaps bears noting that, even if Bundesbank had been properly served with sufficient process and the Court had personal and subject matter jurisdiction over Fagan's claims against Bundesbank, the Court would be inclined to dismiss the action against Bundesbank on the grounds of *forum non conveniens* for the same reasons as detailed above with regard to Commerzbank, provided Bundesbank was amenable to suit in Germany and accepted the specified conditions.

*Co.*, 71 F.3d 58, 66 (2d Cir. 1995).

I conclude that leave to amend is not warranted in this case, as Fagan's proposed amendments would be futile. As previously discussed, with regard to the claims against Commerzbank, the proposed amendments would have no real effect on the *forum non conveniens* analysis, and, in fact, indicate to the Court that Fagan is simply seeking to add defendants in a transparent and wholly insufficient attempt to preclude dismissal for *forum non conveniens*. See the discussion at page 6, *supra*. Likewise, with regard to the claims against Bundesbank, even if the Court accepts the additional factual allegations as true, my conclusions regarding the Court's lack of subject matter jurisdiction under FSIA would remain the same. Accordingly, the proposed amendments would be futile, and therefore I deny Fagan's motion for leave to amend his complaint.

## CONCLUSION

For the foregoing reasons, the Court grants Commerzbank's motion to dismiss Fagan's claims against it pursuant to *forum non conveniens*, subject to the specified conditions.[19] The Court also grants Bundesbank's motion to dismiss Fagan's claims against it. Finally, the Court denies Fagan's motion for leave amend his complaint.

It is SO ORDERED.

Dated: New York, New York
July 11, 2006

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[19] The Clerk of the Court is directed to dismiss the complaint as against Commerzbank only upon the filing of the stipulation discussed in text above.

22